Smith, J.
It was, it is true, the common law of England, at the time when Plowden wrote, that if a debtor was imprisoned, he had no body to look to for sustenance but himself. If he had not the means already in store, by which he could do so, he had to depend upon private benevolence. And if any had the humanity to contribute, he lived by their bounty alone. But if this source failed him, he was left to die in the name of God.
It was a part of the common law to starve a man to death ; but that same common law utterly abhorred perpetual imprisonment. This was a strange *451 inconsistency in the same system of jurisprudence. It is to be hoped, that even in England, under their enlightened judges, it has either been abrogated, or has become obsolete.
If this law can be said to have been made of force in this state, by the act of the legislature of 1712, making such parts of the common law of force, which were not inconsistent with the particular constitutions, customs and laws of the province ; yet it must long since have become obsolete in a country, like this, where the constitution guards against oppression, and where the laws are daily liberalized in fa-vour of insolvent debtors. The very object of the insolvent debtor’s act, passed as long ago as 1759, was expressly for the purpose of granting further relief to poor distressed, and insolvent prisoners for debt. By the aid of this law, after an insolvent debtor has been imprisoned for a certain time, he can by his oath absolve himself entirely, and forever, from all his suing creditors, so humane is its principles. But, in the mean time, the. common law would starve him in gaol, before his term of imprisonment expires, had he no other resource, than the cold hand of charity for his subsistence. Suppose an honest, but unfortunate debtor, who had not a a cent, should be imprisoned by an unrelenting creditor, who would not contribute any thing for his relief; who must 'maintain him? The gaoler would be obliged to receive him into the gaol, and would liberate him at his peril. Would the law impose on the gaoler, the alternative of maintaining this pris *452 oner, or seeing him perish before his eyes with hunger? I think not. The creditor is bound, by his implied contract with the gaoler, to see him paid for t]ie support of the debtor. It is a claim founded in equity, and good conscience; and which the creditor is bound to pay. The act of the legislature, of 1791, has allowed gaolers one shilling per diem, for dieting of white persons in gaol. Later acts extend it to 37\ cents. They are no t denominated prisoners, but persons. By what authority then, can we say, that this allowance is confined to criminals? I know of none. If this law, then, is to be a matter of construction, that construction ought to prevail, which is most consonant to reason : and reason, I think, is decidedly against the common law doctrine. I am, therefore, against the motion for a new trial.
Justices Colcock and Nott concurred.
Brevard, J.
For the reasons given for my opinion, delivered in the case of McLain vs. Hayne, sheriff of York district, determined in this court sometime ago, (which was a case parallel to the present,) I am of opinion, that this motion ought to prevail.
Justices Bay and Grimke concurred with Justice Brevard.,